THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

YVETTE BAILEY,

                              Plaintiff,

        v.

ALPHA TECHNOLOGIES
INCORPORATED, *et al.*,

                              Defendants.

CASE NO. C16-0727-JCC

ORDER ON MOTION TO DISMISS

        This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 10). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby DENIES the motion in part and GRANTS the motion in part for the reasons explained herein.

I.      BACKGROUND[1]

        Plaintiff Yvette Bailey brings this wrongful termination suit against her former employers Defendants Alpha Technologies, Inc. ("Alpha"); Altair Advanced Industries, Inc. ("Altair"); Frederick Kaiser; and Grace Borsari. (Dkt. No. 1 at 1.) Alpha and Altair are Washington corporations that manage product lines for the cable television and cellular telephone industries.

---

[1] This section summarizes the facts as set forth in Plaintiff's complaint, as is appropriate on a motion to dismiss.

1   (*Id.* at 2, 4.) Both corporations are part of the "Alpha Group" of companies. (*Id.* at 2-3.)

2   Frederick Kaiser, a resident of Cyprus and the Bahamas, is Alpha's owner and the Alpha

3   Group's chairman. (*Id.* at 2.) Grace Borsari, a Washington resident, is Altair's owner and chief

4   executive officer (CEO). (*Id.* at 3.)

5       In 2004, Alpha and another company, G.B. Enterprises ("G.B."), pleaded guilty to tax

6   fraud and agreed to pay several million dollars in back taxes, interest, penalties, and fines. (*Id.* at

7   4.) Altair subsequently took over G.B.'s business. (*Id.* at 5.)

8       Bailey worked for Defendants from 1989 until her termination in 2015. (*Id.* at 3.)

9   Throughout her employment, Bailey was directly supervised by Kaiser and/or Borsari. (*Id.* at 6.)

10  One of Bailey's duties was to purchase components for Altair from China. (*Id.* at 5.) However,

11  Defendants "falsely represented in transactional documents that Telecomponent & Supply, Ltd.

12  ("TCS") purchased the components." (*Id.*) TCS is a Hong Kong purchasing agent owned by

13  Kaiser. (*Id.*) Kaiser told Bailey that TCS's profit margin on component sales should not exceed

14  20-25%. (*Id.* at 7.) Having been an employee at the time of the 2004 incident, Bailey understood

15  the instruction to be related to avoiding another tax fraud charge. (*Id.*)

16      Invoices for component purchases were redirected to the Bahamas. (*Id.*) There, Peter

17  Turnquest, an accountant and member of the Bahamian parliament, would "re-invoice" them.

18  (*Id.*) According to Bailey, this re-invoicing was for Defendants' benefit. (*Id.*)

19      In February 2015, Bailey noticed that invoices from the Bahamas showed high profit

20  margins of 50-70%. (*Id.*) Bailey suspected that this could be tax fraud and reported it to Kaiser.

21  (*Id.*) Kaiser told Bailey not to put her findings in writing. (*Id.*)

22      A teleconference was quickly arranged between Bailey, Kaiser, Borsari, and Turnquest.

23  (*Id.*)  Kaiser admonished Turnquest for not being more careful with re-invoicing. (*Id.* at 7-8.) It

24  was decided that Turnquest's component price list must be revised. (*Id.* at 8.)

25      After the teleconference, Kaiser told Bailey that she must travel with him to the Bahamas

26  to help personally revise Turnquest's price list. (*Id.*) Although Bailey said she could help make

the changes by teleconference, Kaiser insisted she join him in person. (*Id.*) Kaiser also insisted that Bailey's husband come along, even though neither Bailey nor her husband wanted him to join because of a medical condition. (*Id.*) When entering the Bahamas, Kaiser instructed Bailey to state on the customs form that she was visiting for vacation, not for work. (*Id.*)

While in the Bahamas, Bailey and Kaiser met with Turnquest and made changes to his component price list. (*Id.*) They returned on Friday, August 12, 2015. (*Id.* at 9.)

The next Wednesday, August 26, Kaiser summoned Bailey to his office. (*Id.*) Borsari was also there. (*Id.*) Kaiser told Bailey that she was terminated because her husband tried to buy drugs from a hotel bartender in the Bahamas. (*Id.*) Kaiser said Turnquest "was told by someone, who was told by someone, who was told by the bartender." (*Id.*) Bailey denied the allegation. (*Id.*) Kaiser responded that it did not matter if the drug allegation was false, because Turnquest no longer wanted to work with her. (*Id.*) Bailey later discovered that Kaiser told employees that she was terminated because she was a "security threat." (*Id.*)

On May 20, 2016, Bailey brought the present suit, alleging seven causes of action: (1) wrongful termination in violation of public policy; (2) failure to pay overtime wages in violation of the Washington Minimum Wage Act (MWA), Wash. Rev. Code chapter 49.46; (3) failure to pay overtime wages in violation of the Fair Labor Standards Act (FLSA), 29 U.S.C. §§ 201-219; (4) willful withholding of wages in violation of Washington's wage rebate statute, Wash. Rev. Code chapter 49.52; (5) defamation; (6) intentional infliction of emotional distress (IIED); and (7) negligent infliction of emotional distress (NIED). (*Id.* at 10-12.)

Defendants move to dismiss Bailey's claims under Fed. R. Civ. P. 12(b)(6). (Dkt. No. 10.) They argue that her wrongful termination claim implicates only Alpha, because the other Defendants were not Bailey's employers. (*Id.* at 12.) They further assert that Bailey's remaining claims fail to state a claim upon which relief can be granted as to any Defendant. (Dkt. No. 10 at 9.)

II.   **DISCUSSION**

A.   **Fed. R. Civ. P. 12(b)(6) Standard**

A defendant may move for dismissal when a plaintiff "fails to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To grant a motion to dismiss, the Court must be able to conclude that the moving party is entitled to judgment as a matter of law, even after accepting all factual allegations in the complaint as true and construing them in the light most favorable to the non-moving party. *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009). However, to survive a motion to dismiss, a plaintiff must cite facts supporting a "plausible" cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009) (internal quotations omitted). Although the Court must accept as true a complaint's well-pleaded facts, "conclusory allegations of law and unwarranted inferences will not defeat an otherwise proper motion to dismiss." *Vasquez v. L.A. County,* 487 F.3d 1246, 1249 (9th Cir. 2007).

B.   **Analysis**

1.   Wrongful Termination Claim: Employer-Employee Relationship

Defendants first allege that Bailey's wrongful termination claim should be dismissed against Altair, Kaiser, and Borsari, because they were not Bailey's employers. (Dkt. No. 10 at 13.) Bailey's complaint explicitly alleges that all four Defendants were her employers. (Dkt. No. 1 at 2-3.) At this stage, the Court accepts as true all plausible factual allegations in a plaintiff's complaint. *Fleming*, 581 F.3d at 925; *Twombly*, 550 U.S. at 556; *see also Acharya v. Microsoft Corp.*, 354 P.3d 908, 912 (2015) ("operat[ing] with the inference" that defendant was plaintiff's employee, despite protestations otherwise).

Defendants argue that Bailey has not made out a plausible claim because she makes only a "bare conclusory assertion" as to her employment. (*Id.* at 15.) This is not true. Bailey's

1   complaint also alleges that she performed tasks for Altair at Kaiser's and Borsari's direction:

2   "Throughout her employment, Plaintiff was directly supervised by Borsari and/or Kaiser." (Dkt.

3   No. 1 at 6.) "Under the direct supervision and knowledge of the Defendants, the components

4   used by [Altair] were purchased for [Altair] from China and elsewhere by Plaintiff." (*Id.* at 5.)

5   "With the direction of Kaiser and/or Borsari, Plaintiff spent hours on the telephone every

6   evening with Chinese component manufactures regarding the purchase of power supply

7   components." (*Id.* at 6.) The complaint further asserts that both Kaiser and Borsari participated in

8   Bailey's termination: "Plaintiff was summoned to Mr. Kaiser's office. When she got to his

9   office, Ms. Borsari was also there. Mr. Kaiser told the Plaintiff she was terminated." (*Id.* at 9.)

10  Finally, the complaint alleges that Defendants acknowledged Bailey's employment relationship

11  extended beyond just Alpha: "Later on August 26, 2015, Plaintiff received a letter via email from

12  George Kolakowski at Alpha Technologies 'Contracts and Legal.'" (*Id.* at 9.) The letter

13  "remind[ed Plaintiff] and reaffirm[ed he]r obligations to Alpha Technologies, Inc. and the Alpha

14  Group of companies as a whole ('Alpha')." [2] (Dkt. No. 10-1 at 2.)

15        Despite these allegations, Defendants assert that the August 26 letter is "the only *fact*

16  alleged in the Complaint to support the claim that Plaintiff was simultaneously employed by

17  multiple companies." (Dkt. No. 10 at 15) (emphasis in original). This confuses factual assertions,

18  which the Court considers at this time, with supporting evidence, which the Court does not

19  consider until the summary judgment stage. Moreover, although the letter does not explicitly

20  state that Bailey was employed by the other Defendants, it does not show otherwise. In fact, the

21  letter arguably suggests that the Alpha Group itself was Bailey's employer. For example, the

22  letter addresses Bailey's obligations to the "Alpha Group of companies as a whole," which it

23

24  _____

25        [2] The Court considers this letter on the motion to dismiss under the "incorporation by
    reference" doctrine. *See Knieval v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (court may take

26  into account documents "whose contents are alleged in a complaint and whose authenticity no
    party questions, but which are not physically attached to the [plaintiff's] pleading").

ORDER ON MOTION TO DISMISS
PAGE - 5

1   designates by shorthand as "Alpha." (Dkt. No. 10-1 at 2.) Thus, every mention of "Alpha" in the

2   letter actually refers to the Alpha Group, not simply Alpha Technologies. The letter then

3   discusses Bailey's "capacity with Alpha"—which, again, means the Alpha Group as a whole—

4   and "our business relationship." (*Id.*)

5        Defendants further cite authority to show that "Washington courts do not impose liability

6   for wrongful discharge on parties not properly considered employers of the complaining party."

7   *MacDonald v. Grace Church Seattle*, 2006 WL 1009283 at *2 (W.D. Wash. Apr. 14, 2006)

8   (citing *Awana v. Port of Seattle*, 89 P.3d 291 (Wash. Ct. App. 2004)). In *Awana*, the plaintiffs

9   argued that the Port of Seattle, which contracted with their employer, should be held liable for

10  their wrongful termination. 89 P.3d at 291-92. The plaintiffs acknowledged that they were not

11  the Port's employers and that the Port did not terminate their employment; however, they argued

12  that "a direct employment relationship should not be required." *Id.* at 292. The Court of Appeals

13  rejected this argument, reasoning that the Port had control over only the jobsite, not the

14  plaintiffs' employment or employee relations. *Id* at 293. This Court applied *Awana*'s holding in

15  *MacDonald*, where the plaintiff likewise admitted that the defendants were not her direct

16  employers. *See* 2006 WL 1009283 at *2. Although the plaintiff raised "strong policy grounds"

17  for extending liability to non-direct employers, the Court found that Washington law did not

18  provide for such an extension. *Id.*

19       Importantly, in neither of these cases did the plaintiffs assert that the defendants were

20  their actual employers. Instead, the plaintiffs tried to stretch the wrongful termination doctrine

21  beyond the employer-employee relationship. That is not the case here: Bailey asserts that

22  Defendants were her direct employers and thus liable for wrongful termination in violation of

23  public policy. *MacDonald* and *Awana* do not explain who constitutes a direct employer and do

24  not necessarily preclude Bailey's claim. Rather, as the *MacDonald* court explained, the *Awana*

25  court "noted the importance of a party's control over the employment of the complaining

26  worker." *MacDonald*, 2006 WL 1009283 at *2; *Awana*, 89 P.3d at 293. Bailey has pleaded facts

showing that Defendants exercised a level of control over her employment exceeding that of the defendants in *MacDonald* and *Awana*.

Washington law also provides for corporate officer liability in the context of intentional torts. *Consulting Overseas Mgmt., Ltd. v. Shtikel*, 18 P.3d 1144, 1147 (Wash. Ct. App. 2001). "Where the officer performs an act or a series of acts which would amount to [the intentional tort] if he acted for himself alone, he is personally liable even though the acts were performed for the benefit of his principal and without profit to himself personally." *Dodson v. Economy Equipment Co.*, 62 P.2d 708, 709 (Wash. 1936). Wrongful termination in violation of public policy is an intentional tort and is subject to this doctrine of liability.[3] *See Danny v. Laidlaw Transit Servs., Inc.*, 193 P.3d 128, 143 (Wash. 2008). Bailey pleaded facts to show that Kaiser and Borsari, as the lead corporate officers for Alpha and Altair, were instrumental in her termination. She has pleaded a sufficient case at this time to survive dismissal.

Defendants' motion to dismiss Bailey's wrongful termination claim as to Altair, Kaiser, and Borsari is DENIED.

### 2.  Wage Claims

Defendants next move to dismiss Bailey's claims for failure to pay overtime wages and wrongful withholding of wages. (Dkt. No. 10 at 16-17.) Bailey brings overtime wages claims under the MWA and the FLSA, as well as a withholding of wages claim under Wash. Rev. Code § 49.52.050. (Dkt. No. 1 at 10-11.) Under the MWA and the FLSA, employers must pay a non-exempt employee at a rate of one-and-a-half times the employee's regular rate for hours worked in excess of 40 hours per week. Wash. Rev. Code § 49.46.120; 29 U.S.C. § 207. Bailey's factual allegations to support her wages claims are as follows:

---

[3] Defendants argue that, under *Awana* and *MacDonald*, corporate officer liability cannot be imposed for wrongful termination. (Dkt. No. 14 at 9.) But, unlike corporate officers, the defendants in those cases were separate entities from the plaintiffs' employers. *Awana* and *MacDonald* do not apply in this context.

1
2
3

> Plaintiff worked at the Bellingham office during the day and from home at night. With the direction of Kaiser and/or Borsari, Plaintiff spent hours on the telephone every evening with Chinese component manufactures [sic] regarding the purchase of power supply components. Defendants expected her to be on-call 24/7 and she was. Plaintiff even worked on Christmas Day.

4

(Dkt. No. 1 at 6.) Defendants assert that these allegations fail to meet the federal pleading

5

standard established in *Landers v. Quality Commc'ns, Inc.*, 771 F.3d 638 (9th Cir. 2014). (Dkt.

6

No. 10 at 16-17.)

7

The *Landers* court held that a plaintiff bringing an FLSA claim for overtime wages must

8

"allege that she worked more than forty hours in a given workweek without being compensated

9

for the overtime hours worked during that workweek." 771 F.3d at 645. The court acknowledged

10

that "most (if not all) of the detailed information concerning a plaintiff-employee's compensation

11

and schedule is in the control of the defendants" and thus "plaintiffs in these types of cases

12

cannot be expected to allege 'with mathematical precision' the amount of overtime compensation

13

owed." *Id.* at 645, 646. Still, the court reasoned, plaintiffs "should be able to allege facts

14

demonstrating there was at least one workweek in which they worked in excess of forty hours

15

and were not paid overtime wages." *Id.*

16

The plaintiff in *Landers* presented "generalized allegations" of overtime wage violations,

17

including assertions that that the defendants "implemented a '*de facto* piecework no overtime'

18

system" and "falsified payroll records to conceal their failure to pay required wages." *Id.* at 646.

19

"Notably absent" from his complaint was "any detail regarding a given workweek when Landers

20

worked in excess of forty hours and was not paid overtime for that given workweek and/or was

21

not paid minimum wages." *Id.* at 646. The court concluded that he failed to state a plausible

22

FLSA claim. *Id.*

23

Bailey's complaint is similar. Although she goes beyond merely paraphrasing the legal

24

standard, *compare Pruell v. Caritas Christi*, 672 F.3d 10, 13 (1st Cir. 2012), she has not

25

"provide[d] 'sufficient detail about the length and frequency of [her] unpaid work to support a

26

reasonable inference that [she] worked more than forty hours in a given week.'" *Landers*, 771

F.3d at 643 (quoting *Nakahata v. New York–Presbyterian Healthcare Sys., Inc.,* 723 F.3d 192, 201 (2d Cir. 2013)). Her allegations that she spent hours on the phone at night and worked on Christmas are "consistent with [Defendants'] liability," *see Iqbal*, 556 U.S. at 678, but do not show that there was a particular workweek in which she worked more than 40 hours without overtime pay. Bailey's allegation that she was on call at all times is likewise too sparse: under the FLSA and MWA, on-call time is not necessarily compensable working time, and the complaint provides no information to discern whether it was here. *See Chelan Cty. Deputy Sheriffs' Ass'n v. Chelan Cty.*, 745 P.2d 1, 6-7 (Wash. 1987).

Bailey's allegations do not reach the level of specificity demanded by *Landers* for overtime wage claims. Her wage withholding claim is based on her assertion that she was denied proper overtime pay. (*See* Dkt. No. 1 at 11; Dkt. No. 13 at 24.) Therefore, the overtime wage and wage withholding claims are DISMISSED without prejudice.

However, Bailey seeks leave to amend any pleadings the Court deems insufficient. (Dkt. No. 13 at 31.) Because the facts alleged show a strong possibility that Bailey's wage claims are valid, the Court finds that granting leave to amend would serve the interests of justice. *See* Fed. R. Civ. P. 15(a)(2); *see also Krainski v. Nev. ex rel. Bd. of Regents of Nev. Sys. of Higher Educ.*, 616 F.3d 963, 972 (9th Cir. 2010) ("Dismissal without leave to amend is improper unless it is clear, upon *de novo* review, that the complaint could not be saved by any amendment."). The Court GRANTS Bailey leave to amend her complaint as to her overtime wage and wage withholding claims.

3. Defamation

Defendants also move to dismiss Bailey's defamation claim, arguing that she pleaded no facts to support the claim as to Alpha, Altair, and Borsari, and that, as to Kaiser, she fails to plead facts sufficient to set out a plausible claim for relief. (Dkt. No. 10 at 18.) A "defamation plaintiff must show four essential elements: falsity, an unprivileged communication, fault, and damages." *Mark v. Seattle Times*, 635 P.2d 1081, 1088 (Wash. 1981).

Bailey's defamation claim is based on the statement that she was a security risk and the accusation that she was married to a drug user. (*See* Dkt. No. 1 at 11; Dkt. No. 13 at 25.) Bailey argues that Alpha and Altair are liable for the actions of their owners—Kaiser and Borsari, respectively—who speak on the companies' behalf. (Dkt. No. 13 at 26.) But, the complaint alleges that only Kaiser made these statements; there is no indication that Borsari was involved. (*See* Dkt. No. 1 at 9.) Thus, Bailey fails to state a claim of defamation against Borsari and Altair. As for Alpha, the general respondeat superior rule is that "the master is liable for the acts of his servant committed within the scope or course of his employment." *Dickinson v. Edwards*, 716 P.2d 814, 819 (Wash. 1986) (internal quotation omitted). The issue of whether Kaiser was acting within the scope of his employment has not been explored. The Court finds it plausible that his statements could be imputed to Alpha. Accordingly, Bailey's failure to plead specific conduct by Alpha does not warrant dismissal of her claim at this time.

Defendants also assert that Bailey's defamation claim against Kaiser and Alpha should be dismissed under a theory of privilege. (Dkt. No. 10 at 23.) Defamatory statements will not give rise to liability if a qualified privilege applies. *Moe v. Wise*, 989 P.2d 1148, 1154 (Wash. Ct. App. 1999). The "common interest" privilege protects "an otherwise slanderous statement [that] is shared with a third person who has a common interest in the subject and is reasonably entitled to know the information." *Pate v. Tyee Motor Inn, Inc.,* 467 P.2d 301, 302 (Wash. 1970). This privilege applies in the corporate context. *See, e.g.*, *Doe v. Gonzaga Univ.*, 24 P.3d 390, 397-98 (Wash. 2001). However, "[w]hen a corporate employee, not acting in the ordinary course of his or her work, publishes a defamatory statement, either to another employee or to a nonemployee, there can be liability in tort for resulting damages." *Id.* at 398. "[T]he privilege may also be lost by showing that the defendant made the statement with actual malice." *Id.*. "To prove actual malice a party must establish that the speaker knew the statement was false, or acted with a high degree of awareness of its probable falsity, or in fact entertained serious doubts as to the statement's truth." *Story v. Shelter Bay*, 760 P.2d 368, 373 (Wash. Ct. App. (1988).

1    As stated above, the "scope of employment" issue has not yet been developed, and thus it

2    is premature for the Court to determine whether the common interest privilege applies.

3    Moreover, Bailey's complaint alleges facts to support actual malice, namely Kaiser's plain

4    awareness of his statements' falsity.

5        Defendants' motion to dismiss Bailey's defamation claim is DENIED as to Kaiser and

6    Alpha and GRANTED as to Borsari and Altair. The claims against Borsari and Altair are

7    DISMISSED without prejudice. Bailey is GRANTED leave to amend her claims against Borsari

8    and Altair. *See* Fed. R. Civ. P. 15(a)(2); *Krainski*, 616 F.3d at 972

9                        4.  Intentional Infliction of Emotional Distress

10       Defendants next ask the Court to dismiss Bailey's IIED claim, arguing that the alleged

11   conduct is not sufficiently extreme. (Dkt. No. 10 at 24.) IIED, or "outrage," has three elements:

12   1) extreme and outrageous conduct; 2) intentional or reckless infliction of emotional distress; and

13   3) severe emotional distress suffered by the plaintiff. *Kloepfel v. Bokor*, 66 P.3d 630, 632 (2003).

14   "The conduct in question must be 'so outrageous in character, and so extreme in degree, as to go

15   beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

16   a civilized community.'" *Dicomes v. State*, 782 P.2d 1002, 1012-13 (Wash. 1989) (quoting

17   *Grimsby v. Samson*, 530 P.2d 291 (1975)). The question of whether the defendant's conduct is

18   sufficiently outrageous is ordinarily for the jury. *Dicomes*, 782 P.2d at 1013. However, the Court

19   may dismiss a claim of outrage where reasonable minds cannot differ as to whether the conduct

20   was sufficiently extreme and outrageous. *Doe v. Corp. of President of Church of Jesus Christ of*

21   *Latter-Day Saints*, 167 P.3d 1193, 1204 (Wash. Ct. App. 2007).

22       Bailey alleges that the circumstances of her termination and Defendants' statements

23   about her being a drug user and a security threat establish a plausible claim of outrage. (Dkt. No.

24   13 at 28.) The Court disagrees. While the facts as alleged are distasteful and unfair, the conduct

25   did not go beyond all possible bounds of decency.

26       *Dicomes* provides a good comparison. There, the plaintiff similarly alleged that her

ORDER ON MOTION TO DISMISS
PAGE - 11

discharge constituted outrageous conduct because it was unfair and tarnished her reputation. *See Dicomes*, 782 P.2d at 1013. The Washington Supreme Court affirmed dismissal of her claim, reasoning that it is not "the fact of the discharge itself," but "the manner in which a discharge is accomplished that might constitute outrageous conduct." *Id.* Dicomes was discharged by private delivery of a termination letter, after which the defendant briefly responded to media inquiries regarding her dismissal. *Id.* The court concluded that this "cannot be considered atrocious and intolerable in a civilized society." *Id.* Here, Bailey was likewise privately terminated. The manner of her discharge was not outrageous. Nor was the motivation behind it. Bad faith, even if it "r[ises] to the level of malice," is not sufficient. *Id.* Although Bailey alleges that she was wrongfully fired for reporting fraud, she has not alleged outrageous conduct. Finally, the *Dicomes* court explained that "mere insults and indignities, such as causing embarrassment or humiliation, will not support imposition of liability on a claim of outrage." *Id.* Even though Bailey asserts that Defendants' statements made her "extremely upset" and portrayed her as "untrustworthy and dishonest," these facts cannot sustain liability for IIED.

Reasonable minds could not disagree as to whether the alleged conduct was sufficiently extreme and outrageous. Nor can the Court envision any amendment to Bailey's complaint that would save this claim. *See Krainski*, 616 F.3d at 972. Accordingly, Bailey's IIED claim is DISMISSED with prejudice.

### 5.  Negligent Infliction of Emotional Distress

Finally, Defendants argue that Bailey's NIED claim should be dismissed for failure to show sufficient duty or damages. (Dkt. No. 10 at 26.)

An NIED claim, like all negligence claims, has four requirements: duty, breach, proximate cause, and damages. *Snyder v. Med. Serv. Corp. of E. Wash.*, 35 P.3d 1158, 1164 (Wash. 2001). "[A]bsent a statutory or public policy mandate, employers do not owe employees a duty to use reasonable care to avoid the inadvertent infliction of emotional distress when responding to workplace disputes." *Bishop v. State,* 889 P.2d 959, 963 (Wash. Ct. App. 1995).

1    "This does not mean, however, that an employer cannot be held responsible when its negligent

2    acts injure an employee, and such acts are not in the nature of employee discipline." *Chea v.*

3    *Men's Wearhouse, Inc.*, 932 P.2d 1261, 1265 (Wash. Ct. App. 1997). "An employee may recover

4    damages for emotional distress in an employment context but only if the factual basis for the

5    claim is distinct from the factual basis for the discrimination claim." *Haubry v. Snow*, 31 P.3d

6    1186, 1193 (Wash. Ct. App. 2001). For example, in *Chea*, the plaintiff sought damages for the

7    emotional distress he suffered from racially-based harassment at work.  932 P.2d at 1262-63. The

8    court noted that the harassment was distinct from any disciplinary action, and it permitted the

9    plaintiff to recover. *Id.* at 1265-66.

10       Bailey asserts that her termination is not the typical workplace dispute claim where

11   recovery would be prohibited. (Dkt. No. 13 at 29.) She cites no authority for the difference

12   between types of discipline claims that may or may not be maintained under a theory of NIED.

13   The Court declines to make such a distinction here. Under Washington law, Bailey may recover

14   for emotional distress only to the extent that the factual basis for her NIED claim is distinct from

15   the factual basis for her wrongful termination claim. *See Haubry*, 31 P.3d at 1193.

16       Bailey's complaint alleges emotional distress from "her termination and the Defendants'

17   defamation of her person and character," namely "[t]he lies that were used to justify her

18   termination." (Dkt. No. 1 at 10.) This suggests that the factual basis for her claim overlaps with

19   the factual basis for her termination claim. However, it also shows that the post-termination

20   defamatory statements played a role in her distress. It is thus unclear whether Bailey has pleaded

21   an adequate factual basis for her NIED claim.

22       Defendants also argue that the complaint makes no assertion that Altair or Borsari caused

23   Bailey emotional distress. (Dkt. No. 10 at 27.) This is true: Bailey's complaint states only that

24   Kaiser made the drug accusation and the security threat statement. (Dkt. No. 1 at 9.) There is no

25   indication that Altair or Borsari participated in any defamatory behavior. Bailey thus fails to

26   articulate an NIED claim against these Defendants.

ORDER ON MOTION TO DISMISS
PAGE - 13

1     Turning to the damages issue, Defendants argue that the complaint fails to allege any

2  objective symptoms of emotional injury. (Dkt. No. 10 at 27.) A plaintiff alleging NIED must

3  "establish that the emotional distress is manifested by objective symptoms." *Haubry*, 31 P.3d at

4  1193. "To satisfy the objective symptomatology requirement[, the] emotional distress must be

5  susceptible to medical diagnosis and proved through medical evidence." *Id.* The complaint

6  alleges only that Bailey is "emotionally devastated," "worrie[d]," and "unable to trust." (Dkt. No.

7  1 at 10.) These are subjective symptoms. According to Bailey, her allegations allow "an

8  inference [to] be drawn that Plaintiff's emotional distress can be manifested by objective

9  symptoms." (Dkt. No. 13 at 30.) While it is possible that Bailey may have experienced objective

10  symptoms, her allegations do not make it plausible that she has.

11     Bailey's complaint fails to makes an adequate claim for NIED. This claim is therefore

12  DISMISSED without prejudice. Pursuant to Fed. R. Civ. P. 15(a)(2) and *Krainski*, the Court

13  GRANTS Bailey's request for leave to amend this claim.

14  **III.    CONCLUSION**

15     For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 10) is DENIED in

16  part and GRANTED in part. The motion is DENIED as to Bailey's claim of wrongful

17  termination against all Defendants and as to the claim of defamation against Kaiser and Alpha.

18  The motion is GRANTED as to Bailey's claim of defamation against Borsari and Altair and as to

19  the claims of unpaid overtime wages, wage withholding, IIED, and NIED against all Defendants.

20     The Court GRANTS Bailey leave to amend her complaint as to her claims of unpaid

21  overtime, wage withholding, defamation against Borsari and Altair, and NIED. If Bailey chooses

22  to do so, she must file an amended complaint within 30 days of this order. The Court's dismissal

23  of those claims will take effect only if Bailey does not amend them within 30 days. The leave to

24  amend does not extend to Bailey's IIED claim, which is DISMISSED with prejudice.

25     //

26     //

ORDER ON MOTION TO DISMISS
PAGE - 14

DATED this 10th day of August 2016.

John C. Coughenour
UNITED STATES DISTRICT JUDGE

ORDER ON MOTION TO DISMISS
PAGE - 15